**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL BLACKBOURN, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO: 1:19-cv-04655 |
| Plaintiff, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) ) | |
| GOHEALTH, LLC, a Delaware limited liability company, BROJO MARKETING, LLC, a Massachusetts limited liability company, and AVENGE DIGITAL, LLC, a Washington limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

1. Plaintiff APRIL BLACKBOURN ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant GOHEALTH, LLC, ("GoHealth") Defendant BROJO MARKETING, LLC ("Brojo") and Defendant AVENGE DIGITAL, LLC ("Avenge Digital," together the "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to herself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

### NATURE OF THE ACTION

2. In the course of selling GoHealth's health policies, GoHealth and its agents, including Brojo and Avenge Digital, placed thousands of automated calls employing a prerecorded voice message to consumers' cell phones nationwide.

3.      However, Defendants did not possess express written consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5.      The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6.      By placing the calls at issue, Defendants have violated the statutory rights of Plaintiff and the Class.

7.      In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

## PARTIES

8.      Plaintiff is a natural person and is a citizen of the District of Nebraska.

9.      Defendant GoHealth is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 214 West Huron St., Chicago, Cook County, Illinois 60654.

2

10.     Defendant Brojo Marketing, LLC, is a limited liability company organized and existing under the laws of the State of Massachusetts with its principal place of business at 177 HUNTINGTON AVE STE 1703 #58291, Boston, Massachusetts, 02115.

11.     Defendant Avenge Digital, LLC is a limited liability company organized and existing under the laws of the State of Washington with its principal place of business at 16632 NE 26th Street, Bellevue, Washington 98008.

12.     Plaintiffs and Defendants are each a "person" as defined by 47 U.S.C. § 153 (10).

## JURISDICTION AND VENUE

13.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14.     This Court has specific jurisdiction over Defendants because the events giving rise to this lawsuit occurred in substantial part within this judicial District.  Defendant Brojo and Defendant Avenge Digital entered into contracts with Defendant GoHealth, located in Illinois, out of which business this lawsuit arose.

15.     This Court also has general jurisdiction over GoHealth because its headquarters is located in this judicial District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants regularly conduct business in the State of Illinois and in this District, and because the wrongful conduct giving rise to this case occurred in substantial part within this judicial District.

## COMMON FACTUAL ALLEGATIONS

17.     Defendant GoHealth sells health insurance.

18.     On GoHealth's website, GoHealth states that it has "revolutionized the health insurance shopping process – and the health care industry as a whole."

19.     Defendant Avenge Digital is a marketing company.

20.     On Avenge Digital's website, Avenge Digital states that it "employs an experienced Search Marketing team allowing them to ramp new offers quickly with the right

3

kind of traffic," and further that it has the "right buyer connections if you are a high volume internet marketer or affiliate."

21.     Avenge Digital's website also states: "Our Superpower Is Making Your Phone Ring!"

22.     According to Avenge Digital's website, it is a business comprised of a team of lead generation, affiliate marking and pay per call industry veterans.

23.     As its main business practice, Avenge Digital calls consumers' cell phones, and sells lead, after a vetting process to ensure the phone number is a valid phone number, to companies, including GoHealth, pursuant to contract.

24.     Defendant Brojo is also a marketing company.

25.     Brojo's website says that it offers "[r]eal time inbound clients with high intent to purchase."

26.     As a primary part of its marketing efforts, GoHealth and/or its agents, including Brojo and Avenge Digital, placed, on GoHealth's behalf, thousands of automated calls employing a prerecorded voice message to consumers' cellular telephones nationwide.

27.     Defendants did not obtain consent prior to placing the calls at issue and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

28.     Upon information and belief, GoHealth is directly or at least vicariously liable for the calls placed by Brojo and/or Avenge Digital and/or its other agents, which calls Avenge Digital placed on behalf of GoHealth with GoHealth's knowledge and/or GoHealth's approval after-the-fact.

29.     GoHealth controlled their agents' behavior by providing the specific criteria needed to qualify live leads that could then be transferred to GoHealth's live agents for sale of GoHealth's insurance products.

30.     GoHealth accepted live leads and solicited sales from these prospective customers that otherwise met its stated criteria to be elligible for a health plan even though these customers were generated through the use of this prohibited automatic dialing equipment without permission.

31.     The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

4

32.     Through the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

33.     Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF

34.     On March 29, 2019 at 5:12 p.m., Plaintiff received a call on her cell phone with number ending in 7007 from a caller with their Caller ID phone number displayed as 712-684-0042.

35.     When Plaintiff answered, she heard a prerecorded voice message asking her to "press one" for information on purchasing health insurance.

36.     Plaintiff "pressed one" to find out who was calling.  Plaintiff was connected with a live agent who solicited Plaintiff for a health insurance plan.

37.     On April 2, 2019, Plaintiff received 4 calls within a twenty-four hour period from the same phone number.

38.     Plaintiff received calls on her cell phone at 12:31 p.m., 4:40 p.m. 5:00 p.m., and the next day at 8:49 a.m. on her phone number ending in 7007 from a caller with their Caller ID phone number displayed as 928-793-0119.

39.     The call came from a "Spoofed" or fake Caller ID phone number that was invalid and could not be called back.

40.     When Plaintiff answered, she heard a prerecorded voice message asking her to "press one."

41.     Plaintiff pressed one and was connected to a live agent.

42.     Plaintiff asked the agent for a number she could call back, and the agent provided the phone number 877-907-4045.

43.     When Plaintiff called that number back, GoHealth identified itself and referred Plaintiff to its website at www.gohealth.com.

44.     Defendants called Plaintiff repeatedly at a rate of two or three times a week for several weeks.

5

COMPLAINT                                                    CASE NO: 19-cv-04655

45.     In total, Plaintiff received at least 20 calls from Defendants.

46.     Upon information and belief, GoHealth provided the 877-907-4045 call-back phone number to Brojo and/or Avenge Digital to use in placing the prerecorded calls to provide a phone number for customers to purchase GoHealth's insurance plans.

47.     Upon information and belief, the automated dialing equipment used by Defendants to place the prerecorded calls to Plaintiff's cellular telephone ending in 7007 has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers, as specified by 47 U.S.C § 227(a)(1) (an "ATDS").

48.     Upon information and belief, the automated dialing equipment used to place the prerecorded calls also has the capacity to send text messages automatically to telephone numbers stored as a list or in a database.

49.     Upon information and belief, the automated dialing equipment has the capacity to, and does, place numerous calls to different cell phone numbers within a very short period of time.

50.     Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants and has never requested that Defendants contact her in any manner.

51.     Defendants caused Plaintiff the very harm that Congress sought to prevent— namely, a "nuisance and invasion of privacy."

**AGENCY ALLEGATIONS**

52.     Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to confirm the exact identify of the parties who called her phone.

53.     However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

54.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent

COMPLAINT                                                                 CASE NO: 19-cv-04655

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

55.     Even if GoHealth did not personally initiate the TCPA-violating calls, GoHealth is liable if it took steps to cause the calls to be made, or if the calls were made pursuant to GoHealth's apparent authority and/or ratification.

56.     GoHealth's integration of robocalling into its sales transactions was so fast and seamless that prospects could be cold called out of the blue, transferred among one or more live representatives, and a new contract for GoHealth's health plan could be written and executed by the parties in under 60 minutes flat.

57.     GoHealth closely controlled the criteria and qualification questions needed before a live customer could be generated, transferred to GoHealth, and then to be sold GoHealth's policies.

58.     GoHealth permitted and authorized its agents to bind itself using the parameters and criteria they established in accepting these live transferred calls.

59.     Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

60.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

61.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as GoHealth may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer

7

separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

62. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

61. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

62. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

63. By hiring a company to make calls on its behalf, GoHealth "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

64. GoHealth knowingly and actively accepted business that originated through the illegal telemarketing calls from its agents.

8

65.     By accepting these contacts, GoHealth "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of GoHealth, as described in the Restatement (Third) of Agency.

## CLASS ALLEGATIONS

63.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of herself and a Class defined as follows:

> All persons within the United States who were called by and/or on behalf of Defendants on said person's cellular or residential telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, within the four years prior to the filing of the Complaint.

64.     The following people are excluded from the Class: (1) any District Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

65.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants or their agents' records.

66.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

67.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests

9

antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

68. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

69. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    i. Whether Defendants or their agents called and played a voice recording to numerous cell phones cell phones;

    ii. Whether Defendants used spoofing technology in violation of the TCPA;

    iii. Whether Defendants obtained prior written consent prior to contacting any members of the Class;

    iv. Whether members of the Class were damaged by Defendants' conduct;

    v. Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct; and,

    vi. Whether Defendants should be enjoined from such unlawful conduct in the future.

70. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

COMPLAINT                                                  CASE NO: 19-cv-04655

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

71.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.    Defendants and/or their agents placed telephone calls to Plaintiff's and the Class members' telephones without having their prior express written consent to do so.

73.    Defendants' calls were made for a commercial purpose.

74.    Defendants used an ATDS to call many Class members simultaneously as proscribed by 47 U.S.C. § 227(b)(1)(D).

75.    Defendants played a prerecorded voice message to the cellular and residential phones of Plaintiff and the Class members as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

76.    As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendant to stop their illegal calling campaign.

77.    Defendants and/or their agents made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

78.    If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief against Defendants, and each of them:

    a) An order certifying the Class as defined above, appointing Plaintiff APRIL BLACKBOURN as the Class representative and appointing Plaintiff's counsel as Class Counsel;

    b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

    c) An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

    d) An injunction requiring Defendants to cease all calls using any "spoofing" technology that show incorrect or invalid Caller ID information, and otherwise protecting interests of the Class;

    e) An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

    f) An award of actual damages and/or statutory fines and penalties;

    g) An award of reasonable attorneys' fees and costs; and

    h) Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

79. Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 10, 2019        Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (CA SBN 323729)*
*mark@javitchlawoffice.com*
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000

12

COMPLAINT                                      CASE NO: 19-cv-04655

Facsimile: 650-648-0705
*Pending Pro Hac Vice Admission

*Attorney for Plaintiff*
APRIL BLACKBOURN
*and the Putative Class*

13